638

## Commonwealth v. Lane

*Howard R. Berninger*, for appellant.

*Jay W. Myers*, for Commonwealth.

KREISHER, P. J., March 12, 1971.—This is an appeal from a conviction of an alleged nonresident hunting with a resident hunting license in October 1970. The warden prosecuted because appellant was using out-of-State license plates on his car, was not paying any Pennsylvania resident taxes, was not registered to vote and used improper means of identification before the issuing authority to procure the license. Appellant testified his parents are nonresidents and that he used their address, that he attended graduate school in another State, that he was employed in Texas last spring when his company transferred him to the P. P. & L. plant project near Washingtonville, Montour County, in April, that he rented a permanent home in Riverside, Northumberland County, and intends to remain

in Pennsylvania so long as he is able to secure employment here, especially on the said project which may take as much as two or more years. Appellant used a medical certificate issued by a Danville doctor for airplane pilot's license purposes to secure a resident hunting license on September 1, 1970.

It is conceded that the issue turns upon the question as to whether or not defendant was a resident or nonresident of Pennsylvania as defined by the Pennsylvania game laws.

Article III, sec. 301, of the Game Code of June 3, 1937, P. L. 1225, 34 PS §1311.301, provides, inter alia:

"For the purposes of this article, any person who has been a bona fide resident of this Commonwealth for a period of sixty days next preceding his application, and was born in the United States of America . . . shall be entitled to the license herein referred to as the resident hunter's license upon the further fulfillment of the requirements of this article."

Section 101 of said code is captioned "definitions"; however, the word "resident" is conspicuous by its absence.

Article I, sec. 102, of The Vehicle Code, 75 PS §102, defines "resident" as "Any person who has a regular place of abode or business in the Commonwealth for a period of more than thirty consecutive days in the year. . ."

It goes without saying that residents are required to have Pennsylvania registration plates and Pennsylvania operator's license to legally make use of the Pennsylvania highways. Appellant explains his failure to comply with this code because he was so advised by a justice of the peace who he claims told him to wait until his out-of-State license expired. There is no doubt defendant's testimony convicts him of a violation of The Vehicle Code.

In Commonwealth v. DeAlessandro, 8 Chester Co. Rep. 124, it was held a man worked and lived in an apartment five days a week in Pennsylvania and two days a week with his family in New Jersey was a Pennsylvania resident under The Vehicle Code. Other State codes in many cases define "resident" in more explicit terms or authorize promulgation of standards by the particular agency involved, such as the Public Welfare Code of June 13, 1967, P. L. 31, 62 PS §101. Public Welfare Rule 3150.1 provides:

"A person meets the residency requirements for public assistance if he is living in Pennsylvania voluntarily and not for a temporary purpose. A person residing in Pennsylvania for a temporary purpose such as a visit, school attendance, seasonal employment, migrant workers and the like who plan to leave Pennsylvania upon completion of the purposes does not meet the resident requirements."

The Game Commission is not authorized to promulgate any such standards, and, therefore, we are bound by the provisions as set forth in the code.

In Commonwealth v. Webber, 28 D. & C. 2d 378, the Lycoming County Court held "resident" as used in the game laws to be synonymous with domicile, and found New York State students attending Lycoming Technical Institute guilty of hunting without a nonresident license.

On page 380 of the opinion, it is stated:

"Although there seems to be no recorded cases concerning the construction of the term bona fide resident under the game laws, we are holding that this term under the game laws means one who lives in Pennsylvania with domiciliary intent. . . ."

Although we have great respect for the late Judge Williams who decided the Webber case in 1962, we believe he failed to give due consideration to section 302 of the Game Law which provides, in part, as follows:

"Each such resident as provided in the preceding section, upon application made, in writing, to any agent authorized to issue such licenses within the Commonwealth, the presentation of proof that he is a citizen of the United States and a bona fide resident of this Commonwealth under the requirements of this article, and the establishment of his identity to the satisfaction of the authority issuing the license, or to the satisfaction of the justice of the peace, magistrate, or notary public, or any agent designated to receive applications for licenses, when taking such applications as hereinafter authorized, by producing a bank book, letters, lodge cards, police cards, a motor vehicle driver's license, or some other positive means of identification . . . shall be entitled to a resident hunter's license and a tag with the number of the license thereon, which shall entitle the holder to hunt or trap for all wild birds and wild animals which may legally be hunted or trapped in this Commonwealth . . ."

In view of the language used in section 302, we believe that the legislature placed the matter of the determination of whether or not a person is a bona fide resident in the issuing authority and not in the courts in absence of fraud or capricious mistake.

Appellant offered into evidence the following letter from the issuing authority:

"This is to certify that on September 1, 1970, I as Treasurer of Montour County, sold a hunting license No. 7233 B to James H. Lane, R. D. No. 6, Danville, Pa., phone 275-4915. Means of identification is a medical certificate third class, signed by Benjamin Schneider, M. D.

"I have accepted this identification as proof of his legal residence being R. D. No. 6, Danville, Pa. 17821."

Appellant testified he considered himself a bona fide resident of the State for a period of more than 60 days before applying for the license, that he did not attempt

to deceive or defraud the issuing agent but gave him the true facts so that he could determine whether he came within the act providing for "some other positive means of identification" and had the agent decided against the application for a resident license, he would have gladly purchased a nonresident license, and, therefore, it was the agent of the State who got him into trouble and not his own action or conduct. The only fallacy with this argument is that it was appellant's failure to comply with The Vehicle Code that aroused the warden's suspicions and caused his trouble.

Appellant here is endeavoring to carry water on both shoulders. However, the court is obliged to comply with the law as the legislature has set it forth and, as we have already noted, appellant was clearly in violation of The Vehicle Code, but we conclude the Commonwealth has failed to make a case beyond a reasonable doubt to show appellant was in violation of the Game Law and this is the only charge we are here concerned with, as he was not before the court for a violation of The Vehicle Code.

We believe that the State is bound by the acts of its agents the same as any other principal or employer is bound by the acts of their agents which are performed within the scope of their employment.

It seems logical to us that one State bureau is in no position to make an arrest of an individual for the mistake in judgment of the agent of a different State bureau. We believe that the fault in these cases lies with the issuing agent unless it appears, as in some cases we have ruled upon in the past, that the applicant perpetrated an active fraud upon the issuing agent to secure an improper license, in which cases we adjudged the defendant guilty. However, under the uncontradicted facts in this case, we find insufficient fraud to absolve the issuing authority from his statutory duty

and convict the appellant of criminal conduct, and to this end, we enter the following:

ORDER OF COURT

And now, to wit, March 12, 1971, the appeal in the above-captioned case is sustained, the finding of the justice of the peace is reversed, the costs are placed upon the county, and the bail posted, and the fine and costs, if paid, are directed to be returned to appellant or his counsel, less the usual commission as allowed by law.